■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL D. RIVERA, Appellant. [957 NYS2d 423]—

Kavanagh, J.

Defendant initially claims that County Court erred when it denied his motion to suppress because Perry's identification of him was secured as the result of a suggestive showup conducted by the police shortly after the robbery was committed. "Showup identifications are permissible where the showup was 'conducted in close geographic and temporal proximity to the crime . . . and the procedure used was not unduly suggestive' " (*People v Harris*, 64 AD3d 883, 883 [2009], *lv denied* 13 NY3d 836 [2009], quoting *People v Brisco*, 99 NY2d 596, 597 [2003]; *see People v Judware*, 75 AD3d 841, 843 [2010], *lv denied* 15 NY3d 853 [2010]; *People v Wicks*, 73 AD3d 1233, 1235 [2010], *lv denied* 15 NY3d 857 [2010]; *People v Tillman*, 57 AD3d 1021, 1023 [2008]). Here, defendant was identified by Perry within 45 minutes of the robbery when he was brought to the crime scene in an unmarked car by police. He was not handcuffed or otherwise restrained and Perry was simply told prior to making her identification that she was not to assume that defendant was the person she saw at the store at about the time the robbery was committed (*see People v Judware*, 75 AD3d at 843). Given the time, place, and circumstances under which the identification was made, we find that the showup was not unduly suggestive and defendant's motion to suppress was properly denied.

As for defendant's challenge to the weight of the evidence,[2] we must, since a different verdict would not have been unrea-

---

2. In his motion for a trial order of dismissal, defendant simply argued that the People failed to present a prima facie case. As a result, defendant did not preserve his challenge to the legal sufficiency of the evidence (*see People v Harvey*, 96 AD3d 1098, 1099 n [2012], *lv denied* 20 NY3d 933 [Nov. 27, 2012]; *People v Terry*, 85 AD3d 1485, 1486 [2011], *lv denied* 17 NY3d 862 [2011];

sonable, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Romero*, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]; *see People v Shepherd*, 83 AD3d 1298, 1298 [2011], *lv denied* 17 NY3d 809 [2011]). Specifically, defendant claims that the People failed to prove beyond a reasonable doubt that he was the perpetrator of the robbery. We disagree.

At trial, the owner of the convenience store, Shagufta Nasir, testified that she was working alone at the store when a man brandishing a handgun entered the premises wearing a scarf that covered a portion of his face. He ordered her to give him money from the cash register and threatened to kill her if she called the police. Nasir identified defendant as the perpetrator based on his eyes, the color of his skin and the clothing he was wearing when apprehended by the police. Because Nasir was unable to identify defendant as the perpetrator at the scene shortly after the robbery took place, her in-court identification of him was obviously suspect. However, Perry testified that moments before the robbery, she was leaving the store when a man entered with a scarf that covered his mouth and part of his nose. She recalled that the man was also wearing a white "hoodie" sweatshirt underneath a winter jacket, which had fur around its hood. A short time later, Perry was across the street when she observed the same man, his face now uncovered, walking briskly away from the store, and his jacket was partially opened revealing that it had an orange-colored lining. At trial, Perry identified defendant as the man she saw at the store, and she testified that the clothing taken from him after his arrest was similar to that worn by the man she saw leaving the store when the robbery was committed.

Another witness, Ashleigh Deronda, testified that she was in her home across the street from the store when the robbery occurred and, at about that time, observed a man wearing a "furry coat with orange inside the coat" running from the store down Reid Street toward East Main Street. She stated that the fur and the orange lining of the coat taken from defendant after his arrest were similar to that being worn by the individual she saw running down Reid Street. Also, police officer Michael Cole testified that defendant was detained near the crime scene shortly after the robbery had taken place because his clothing and, in particular, the jacket with the orange lining, matched

the description given by eyewitnesses to the incident. While defendant claimed that he was at his sister's house at the time of the robbery, his account of his day's activities was riddled with inconsistencies, and his sister's testimony, if believed, did not conclusively establish an alibi defense. In sum, the evidence at trial, when viewed in a neutral light and coupled with the rational inferences to be drawn from it, provided ample support for the jury's determination that defendant's guilt was established beyond a reasonable doubt (*see People v Castellano*, 100 AD3d 1256, 1257-1258 [2012]; *People v Jackson*, 100 AD3d 1258, 1260-1261 [2012]).

Defendant's remaining arguments do not require extended discussion. In its *Sandoval* ruling, County Court, after weighing the relevant factors, permitted the People to cross-examine defendant regarding nine criminal convictions, but barred any questioning of him as to six others. Its decision represented a measured effort to balance the prejudice to defendant from such cross-examination with the right of the People to question him on issues that clearly pertained to his credibility (*see People v Muniz*, 93 AD3d 871, 875 [2012], *lv denied* 19 NY3d 965 [2012]; *People v Wimberly*, 86 AD3d 806, 807 [2011], *lv denied* 18 NY3d 863 [2011]; *People v Smith*, 63 AD3d 1301, 1304 [2009], *lv denied* 13 NY3d 862 [2009]).[3] Moreover, defendant's significant criminal history, including two prior felony convictions, bars any modification of this sentence (*see People v Castellano*, 100 AD3d at 1258; *People v Boland*, 89 AD3d 1144, 1146 [2011], *lv denied* 18 NY3d 955 [2012]).

Finally, defendant's conviction for petit larceny must be reversed and that count in the indictment dismissed. As petit larceny is a lesser included offense of robbery in the second degree (*see* CPL 1.20 [37]; *People v Bowman*, 79 AD3d 1368, 1369 [2010], *lv denied* 16 NY3d 828 [2011]), the conviction for petit larceny was deemed dismissed upon defendant's conviction of the greater offense (*see* CPL 300.40 [3] [b]; *People v Perez*, 93 AD3d 1032, 1039 [2012], *lv denied* 19 NY3d 1000 [2012]; *People v Tucker*, 91 AD3d 1030, 1031 [2012], *lv denied* 19 NY3d 1002 [2012]).

---

**3.** County Court allowed the People to question defendant as to the circumstances surrounding his conviction for menacing in the second degree (January 2007) and two prior petit larceny convictions (October 2005 and January 2007). It permitted limited inquiry as to defendant's two prior convictions for resisting arrest (January 2004 and June 2009), two convictions for petit larceny (December 2009 and May 2005), criminal possession of marihuana (July 2008), and criminal possession of a controlled substance in the seventh degree (March 2005). As noted, the court precluded any inquiry as to defendant's six other convictions.

Peters, P.J., Spain, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law, by reversing defendant's conviction of petit larceny under count 2 of the indictment; said count dismissed and the sentenced imposed thereon vacated; and, as so modified, affirmed.