Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:  July 28, 2016                    107036
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

CLARENCE GREEN,
                        Appellant.
_____


Calendar Date:  June 1, 2016

Before:  Peters, P.J., Garry, Rose, Mulvey and Aarons, JJ.

                        _____


        Danielle Neroni Reilly, Albany, for appellant.

        P. David Soares, District Attorney, Albany (Brittany L.
Grome of counsel), for respondent.


                        _____


Garry, J.

        Appeal from a judgment of the Supreme Court (Breslin, J.),
rendered July 22, 2014 in Albany County, upon a verdict
convicting defendant of the crimes of robbery in the third degree
and grand larceny in the fourth degree.

        Defendant was indicted for robbery in the third degree and
grand larceny in the fourth degree stemming from an incident in
which he was alleged to have forcibly stolen a deposit bag
containing $9,000 from a liquor store manager (hereinafter the
victim) in the City of Albany.  Following a jury trial, defendant
was found guilty of both counts of the indictment and was
thereafter sentenced to an aggregate prison term of 3½ to 7
years.  Defendant appeals.

Defendant's contention that the evidence was legally insufficient to establish the use of force element of his conviction for robbery in the third degree is unpreserved for our review as defense counsel's motion for a trial order of dismissal was not "specifically directed at the alleged error" (People v Gray, 86 NY2d 10, 19 [1995] [internal quotation marks and citation omitted]; see People v Stevens, 87 AD3d 754, 754 n [2011], lvs denied 18 NY3d 861 [2011]).  However, as defendant was not required to preserve his further contention that the verdict was against the weight of the evidence, under that review, we evaluate the evidence to ensure that each of the elements of the charged offenses were established (see People v Rojas, 121 AD3d 1427, 1428 [2014], lv denied 24 NY3d 1221 [2015]; People v Gaudiosi, 110 AD3d 1347, 1348 [2013], lv denied 22 NY3d 1040 [2013]).

At trial, the People elicited testimony from the victim, among other witnesses.  The victim testified that he was on his way to make a bank deposit while in possession of a plastic bag containing $9,000 when defendant pulled the bag off his wrist, "ripp[ing] the handles off [his] hand forcefully," and fled.  The victim then chased after defendant and ultimately cornered him in a nearby parking lot, blocking his only route of escape.  Defendant and the victim then "ran into each other" as the victim attempted to dislodge the bag from defendant's grasp and defendant attempted to push the victim out of the way.  Ultimately, the victim was able to recover the bag and defendant fled the parking lot.  Several other witnesses observed the victim chasing after defendant while calling for help.  One of these witnesses testified that he had been working in an office building next to the parking lot and pursued defendant after hearing the victim calling for help.  After a short chase, this witness tackled and restrained defendant until police arrived.  Another witness who had observed the pursuit identified defendant as the individual that had fled and testified that he assisted in restraining defendant.  The arresting police officer testified that he arrived on the scene to find defendant detained by two individuals and subsequently took defendant into custody.  Contrary to defendant's contention, the evidence established that defendant "forcibly [stole] property" (Penal Law § 160.05).  The victim's testimony that defendant forcefully ripped the bag from

his hands, causing the handles to rip, and pushed the victim away as the victim sought to retrieve the bag satisfied the forcible stealing element of the crime (see Penal Law § 160.00; People v Barksdale, 50 AD3d 400, 401 [2008], lv denied 10 NY3d 932 [2008]; People v Rumrill, 40 AD3d 1273, 1275 [2007], lv denied 9 NY3d 926 [2007]; People v Jones, 4 AD3d 622, 623-624 [2004], lv denied 2 NY3d 801 [2004]). Upon review of the record, we are satisfied that the verdict was in accord with the weight of the evidence.

Defendant's contention that Supreme Court erred in refusing to suppress certain statements that he made to the police while in custody because he did not knowingly and intelligently waive his Miranda rights is without merit. The testimony and a booking room videotape admitted into evidence at the Huntley hearing established that a detective read defendant his Miranda rights from a preprinted card prior to initiating any questioning. When asked if he understood his rights, defendant answered in the affirmative and, immediately thereafter, provided detailed responses to questions regarding his involvement in the incident. Accordingly, defendant's unambiguous acknowledgment that he understood his rights and subsequent participation in answering the detectives' questions constituted an implicit waiver of his Miranda rights (see People v Sirno, 76 NY2d 967, 968 [1990]; People v Fiorino, 130 AD3d 1376, 1379-1380 [2015], lv denied 26 NY3d 1087 [2015]; People v Jaeger, 96 AD3d 1172, 1173 [2012], lv denied 19 NY3d 997 [2012]), and Supreme Court did not err in denying defendant's motion to suppress his statements.

Defendant further contends that Supreme Court erred in its response to defendant's Batson challenge to the People's use of a peremptory challenge during jury selection. When a Batson challenge is raised in response to an alleged use of a peremptory challenge with discriminatory intent, the court must utilize a three-step framework to resolve the challenge. "At step one, 'the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges'" (People v Hecker, 15 NY3d 625, 634 [2010], quoting People v Smocum, 99 NY2d 418, 420 [2003]). If the court finds that the moving party has demonstrated a prima facie case, then the burden shifts "to the nonmoving party to offer a facially neutral explanation for each suspect challenge" to overcome the inference

of discrimination (People v Hecker, 15 NY3d at 634; see People v Smocum, 99 NY2d at 422; People v Jones, 136 AD3d 1153, 1158 [2016], lv denied 27 NY3d 1000 [2016]). If the nonmoving party offers such an explanation, "the burden shifts back to the moving party to prove purposeful discrimination and the trial court must determine whether the proffered reasons are pretextual" (People v Hecker, 15 NY3d at 634-35 [internal quotation marks and citations omitted]; accord People v Jones, 136 AD3d at 1158).

Here, defendant lodged a Batson objection after the People used peremptory challenges to strike the only two black prospective jurors in one jury panel, identified as juror Nos. 10 and 11, and noted that the People had also struck another potential black juror from a prior panel.[1] In ruling on the challenge, Supreme Court observed that a black juror in a prior panel had been seated and found that, "[f]rom [the court's] own basis . . . I can think of many reasons race neutral I would excuse [prospective juror No. 10]." The court required the People to set forth a race-neutral explanation with respect to prospective juror No. 11. The prosecutor explained that he did not want a football player on his jury and that prospective juror No. 11 had been "very glib in his responses."[2] In response, defendant stated that the explanation was pretextual; the court disagreed, finding the prosecutor's explanation acceptable on the ground that the voir dire exchange with prospective juror No. 11 "almost create[d] an animosity between [the prosecutor] and the juror."

---

[1] Defendant did not — and does not now — raise any challenge to the People's use of a peremptory challenge on this prospective juror.

[2] Prospective juror No. 11 disclosed during voir dire that he was a collegiate football player. The prosecutor specifically noted concern over a particular exchange with the prospective juror during which, in response to the prosecutor's question about whether he would make a good juror, prospective juror No. 11 stated, "You scouting me so —" to which the prosecutor interjected, "We are. We are."

With respect to prospective juror No. 10, we reject defendant's contention that Supreme Court improperly condensed the first two steps of its Batson inquiry; rather, defendant failed to meet his prima facie burden at the first step of the inquiry and, thus, the second step was not reached. The court's statement that there were possible race-neutral reasons for the peremptory challenge of prospective juror No. 10 did not render moot the issue of whether defendant had established a prima facie case. The court was permitted to consider "the totality of the relevant facts" bearing on whether defendant had established an inference of discriminatory intent (People v Hecker, 15 NY3d at 651 [internal quotation marks and citation omitted]; see Batson v Kentucky, 476 US 79, 96-97 [1986]). The court did not find, nor did the People volunteer, any specific race-neutral justification for the peremptory challenge that would have then required the court to proceed to the next step of the analysis (see People v Smocum, 99 NY2d at 423; People v Payne, 88 NY2d 172, 182 [1996]). Moreover, in support of his Batson objection, defense counsel merely argued that three black prospective jurors had been challenged, and now argues that this established an inference of discriminatory motive. Although this first step is "not intended to be onerous[,] . . . purely numerical or statistical arguments are rarely conclusive in the absence of other facts or circumstances to give rise to an inference of discrimination" (People v Hecker, 15 NY3d at 651 [internal quotation marks and citation omitted]). As defendant did not raise any other facts supporting an inference of discrimination (compare People v Hurdle, 99 AD3d 943, 944 [2012]), we find no error in the determination that defendant failed to meet his prima facie burden (see People v Jenkins, 84 NY2d 1001, 1003 [1994]; People v Morris, 140 AD3d 1472, ___, 2016 NY Slip Op 04979, *2-3; People v Fryar, 29 AD3d 919, 920-921 [2006], lv denied 7 NY3d 812 [2006]; People v Vidal, 212 AD2d 553, 554 [1995], appeal denied 85 NY2d 981 [1995]).

As to prospective juror No. 11, defendant asserts that Supreme Court erred in determining that the People proffered a nonpretextual justification for the challenge. We disagree. The People's justification that prospective juror No. 11 was "glib" in his responses provided "a facially neutral explanation for [the] suspect challenge" (People v Hecker, 15 NY3d at 634)

premised on "a 'rationale [with] some basis in accepted trial strategy'" (id. at 658, quoting Miller-El v Cockrell, 537 US 322, 339 [2003]). In response to this explanation, defense counsel merely stated, in a conclusory fashion, that the justification was pretextual. According appropriate deference to the court's determination (see People v Hecker, 15 NY3d at 656-657; People v Knowles, 79 AD3d 16, 21 [2010], lv denied 16 NY3d 896 [2011]), we find no error in its finding that the proffered justification was valid and nonpretextual (see People v Wells, 7 NY3d 51, 58 [2006]; People v English, 119 AD3d 706, 706 [2014], lv denied 24 NY3d 1043 [2014]; People v Lee, 80 AD3d 877, 879-880 [2011], lvs denied 16 NY3d 832, 833, 834 [2011]; People v Morgan, 24 AD3d 950, 952 [2005], lv denied 6 NY3d 815 [2006]).

Next, defendant argues that Supreme Court erroneously denied his requests to submit a petit larceny charge as a lesser included offense for the jury's consideration. A defendant is entitled to a lesser included offense charge when he or she establishes "that it is impossible to commit the greater crime without necessarily committing the lesser and there [is] a reasonable view of the evidence which would support a finding that the defendant committed only the lesser offense" (People v Barney, 99 NY2d 367, 371 [2003]; see People v Baker, 123 AD3d 1378, 1380 [2014]; People v Rumrill, 40 AD3d 1273, 1275 [2007], lv denied 9 NY3d 926 [2007]). Here, the first prong is indisputably met; petit larceny, which is committed when a defendant "steals property" (Penal Law § 155.25), is a lesser included offense of robbery in the third degree (see People v Rivera, 101 AD3d 1478, 1481 [2012]). However, even when seen in the light most favorable to defendant (see People v Bowman, 79 AD3d 1368, 1370 [2010], lv denied 16 NY3d 828 [2011]), there was no reasonable view of the evidence that would suggest that defendant stole the victim's property without the use of force so as to justify submission of the lesser charge to the jury (see People v Wilkerson, 140 AD3d 1297, ___, 33 NYS3d 523, 530 [2016]; People v Green, 134 AD3d 418, 418 [2015], lv denied 27 NY3d 965 [2016]). As previously discussed, the evidence showed that defendant forcibly pulled the bag from the victim's hands, causing the handles to rip off of the bag, and, thereafter, tussled with the victim in an effort to retain possession of the bag. Accordingly, we find no error.

Supreme Court properly accepted defendant's prior Florida conviction for uttering forged instruments (see Fla Stat Ann § 831.02) as a predicate felony for purposes of sentencing defendant as a second felony offender. In doing so, the court determined that the Florida crime was the equivalent of the New York crime of criminal possession of a forged instrument in the second degree, a class D felony (see Penal Law § 170.25). In applying the "strict equivalency" test for determining if a foreign conviction may be utilized to adjudicate a defendant a second felony offender, a court must determine whether the foreign conviction "include[s] all the essential elements of a New York felony" (People v Ramos, 19 NY3d 417, 419 [2012]). This analysis requires the court to engage in "'a comparison of the crimes' elements as they are respectively defined in the foreign and New York penal statutes,' without regard to the charging instruments" (People v Parker, 121 AD3d 1190, 1191 [2014], quoting People v Muniz, 74 NY2d 464, 467-468 [1989]). Upon our review, we agree with the court's determination that the two crimes share essential elements and were sufficiently equivalent to permit the use of the Florida crime as a predicate felony. Contrary to defendant's contention, the fact that the Florida statute requires both uttering and publication of an instrument — whereas Penal Law § 170.25 requires merely uttering — does not alter this conclusion. Defendant does not identify, nor are we able to perceive, any set of circumstances in which an individual could violate the Florida statute without also violating the New York statute, and the fact that "it is possible to violate the [New York] statute without violating the [Florida] statute . . . is not a sufficient basis to preclude a predicate felony determination" (People v De Gaspard, 170 AD2d 835, 839 [1991], lv denied 77 NY2d 994 [1991]). Thus, the court did not err in sentencing defendant as a second felony offender on the basis of the prior Florida conviction (see People v Grubbs, 48 AD3d 1186, 1186 [2008], lv denied 10 NY3d 811 [2008]; People v De Gaspard, 170 AD2d at 839).

Finally, in the absence of any objection, defendant's various claims of prosecutorial misconduct are unpreserved for our review, and, in any event, "the record as a whole fails to disclose that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of

a fair trial" (People v Fiorino, 130 AD3d 1376, 1380 [2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 1087 [2015]; see People v Winchell, 129 AD3d 1309, 1313 [2015], lv denied 26 NY3d 973 [2015]).

Peters, P.J., Rose, Mulvey and Aarons, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court